UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:22-cv-00225-RJC-DCK

| JOSEPHINE ARKU, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **ORDER** |
| WELLS FARGO BANK, NATIONAL ASSOCIATION, | ) | |
| Defendant. | ) | |

**THIS MATTER** comes before the Court on Defendant's Motion to Dismiss Plaintiff's Complaint. (DE 5). For the reasons stated herein, the Court denies Defendant's Motion to Dismiss.

**I.   BACKGROUND**

**A.   Factual Background**

Plaintiff Josephine Arku filed this action against Defendant Wells Fargo Bank, National Association ("Wells Fargo") seeking compensatory damages for allegedly informing Plaintiff's prospective employers that she owed Wells Fargo an overpayment which caused her to lose several job opportunities. (DE 1-1 at ¶9).

Accepting the well-pleaded factual allegations of the Complaint as true, Plaintiff worked for Wells Fargo for more than twenty years when she needed to take paid leave from work. (*Id.* at ¶3). Thereafter, in February 2016, she was subject to a corporate layoff and received a severance package which included continuation of her salary for eleven months. (DE 1-2 at 2). Wells Fargo calculated the number of benefits that Plaintiff received. (DE 1-1 at ¶4). In August 2016, Plaintiff accepted short-term employment for five months through Wells Fargo and then started to apply

1

for other job opportunities. (DE 1-2 at 2). Potential employers notified Plaintiff that Wells Fargo reported her as owing an overpayment to Wells Fargo. (DE 1-1 at ¶6). Once Plaintiff became aware of the overpayment, she contacted Wells Fargo and paid back the overpayment with the understanding that Wells Fargo would remove the overpayment information from her record. (*Id.* at ¶7). After receiving payment, Wells Fargo failed to remove the overpayment information from Plaintiff's record, despite numerous requests to do so. (*Id.* at ¶¶8, 10). Between 2018 and 2020, Plaintiff applied to employers and believes, due to the overpayment listing on her record, that she lost various job opportunities. (*Id.* at ¶9). Plaintiff alleges that Wells Fargo's failure to correct the adverse employment information caused her to lose $135,000 in income and resulted in a $100,000 increase in interest payments regarding her home and vehicle loans. (DE 1-2 at 3).

**B.     Procedural Background**

Plaintiff filed the instant Complaint on April 1, 2022, in Mecklenburg County, alleging two counts: breach of contract and negligent misrepresentation. (DE 1-1 at 3, 5). On May 20, 2022, Wells Fargo removed the case to the Western District Court of North Carolina. (DE 1). Wells Fargo now moves to dismiss both counts of the Complaint. (DE 6).

**II.    STANDARD OF REVIEW**

The standard of review for a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim is well known. "A motion to dismiss under Rule 12(b)(6) 'challenges the legal sufficiency of a complaint,' including whether it meets the pleading standard of Rule 8(a)(2)." *Fannie Mae v. Quicksilver LLC*, 155 F. Supp. 3d 535, 542 (M.D.N.C. 2015) (quoting *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009)). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A motion to dismiss, "serves 'to test

2

the formal sufficiency of the state of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case.'" *Adkins v. Holland*, 216 F. Supp. 2d 576, 579 (S.D.W. Va. 2002), aff'd, 87 Fed. Appx. 886 (4th Cir. 2004), and aff'd, 87 Fed. Appx. 886 (4th Cir. 2004). Facial plausibility means allegations that allow the court to draw the reasonable inference that defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678.

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Therefore, "a Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of [her] claim entitling [her] to relief." *Ruttenberg v. Jones,* 283 Fed. Appx. 121, 128 (4th Cir. 2008) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Additionally, when ruling on a motion to dismiss, a court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). Nonetheless, a court is not bound to accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "Courts cannot weigh the facts or assess the evidence at this stage, but a complaint entirely devoid of any facts supporting a given claim cannot proceed." *Potomac Conference Corp. of Seventh-Day Adventists v. Takoma Acad. Alumni Ass'n, Inc.*, 2 F. Supp. 3d 758, 767–68 (D. Md. 2014). Furthermore, the court "should view the complaint in a light most favorable to the plaintiff." *Mylan*

3

*Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Lastly, "[i]n addition to the Complaint's specific allegations, the Court may also consider any materials 'attached or incorporated into the complaint.'" *Hunter v. Amazon.com Servs., LLC*, No. 321-CV-00258-FDW-DSC, 2021 WL 5291912, at *2 (W.D.N.C. Nov. 12, 2021); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011); *see* FED. R. CIV. P. 10(c); *Thompson v. Greene*, 427 F.3d 263, 268 (4th Cir. 2005).

### III. DISCUSSION

In the Motion to Dismiss, Wells Fargo argues (1) it is immune from civil liability; (2) Plaintiff failed to state a claim for breach of contract; (3) the breach of contract claim is barred by the statute of limitations; (4) and Plaintiff did not meet the heightened pleading standard for a negligent misrepresentation claim. (DE 6).

#### A. Civil Immunity

Under N.C. Gen. Stat. § 1-539.12, Wells Fargo asserts that it is immune from liability for both the breach of contract and negligent misrepresentation claims. Wells Fargo cites to subsection (a) of the statute, which states:

> An employer who discloses information about a current or former employee's job history or job performance to a prospective employer of the current or former employee upon request of the prospective employer or upon request of the current or former employee is immune from civil liability and is not liable in civil damages for the disclosure or any consequences of the disclosure.

The statute further defines "job performance" as "(1) [t]he suitability of the employee for re-employment; (2) [t]he employee's skills, abilities, and traits as they may relate to suitability for future employment; and (3) [i]n the case of a former employee, the reason for the employee's separation." N.C. GEN. STAT. ANN. § 1-539.12(b) (1-3).

Relying on this statute, Wells Fargo argues that it has civil immunity because reporting the

overpayment information is akin to disclosing Plaintiff's job history and performance to a prospective employer. In particular, Wells Fargo argues that the information relates to Plaintiff's suitability for re-hire. Plaintiff disagrees, arguing that overpayment information is not correlated to an employee's job performance.

The statute appears incongruent with the facts of this case. The statute only provides immunity when a former employer provides information to a prospective employer regarding an employee's job performance or job history. Here, the information that Wells Fargo disclosed about Plaintiff was her failure to pay an overpayment that she received from Wells Fargo. It is unclear how this information pertains to her job performance or job history. For example, the best and worst employee could receive an overpayment from the same employer and disclosing this information would provide no insight into the abilities or job performance of either employee.

Moreover, the facts do not show that Wells Fargo disclosed the overpayment information "upon request of the prospective employer." N.C. GEN. STAT. § 1-539.12. It appears that Wells Fargo reported this information to a Credit Bureau. (DE 7 at 4). There are no facts that Wells Fargo provided any information about Plaintiff directly to a prospective employer upon that prospective employer's request as required under the statute.

Regardless, even if the statute does apply to information about an employee's failure to pay back an overpayment, it does not provide immunity when the information is false. *Hunter v. Amazon.com Servs., LLC*, No. 3:21-CV-00258-FDW-DSC, 2021 WL 5291912, at *5 (W.D.N.C. Nov. 12, 2021) ("N.C. Gen. Stat. § 1-539.12(a), which provides civil liability to 'an employer who discloses information about a current or former employee's job history or job performance'" does not apply when "the disclosed information was false."). Here, Plaintiff alleges that Wells Fargo failed to remove the overpayment information even after she repaid it, and that she lost potential

5

employment because of this. Plaintiff thus alleges that she lost employment opportunities because of false information that Wells Fargo provided. This precludes civil immunity.

### B. Breach of Contract

Wells Fargo argues that no contract was formed which precludes the breach of contract claim and that, even if a contract was formed, the statute of limitations bars any recovery for a breach. Under North Carolina law, "[t]he elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 530 S.E.2d 838, 845 (N.C. Ct. App. 2000). A valid contract requires offer, acceptance, consideration, and mutuality of assent of terms that are sufficiently definite to enable a court to enforce them. *Triad Packaging, Inc. v. SupplyONE, Inc.*, 925 F. Supp. 2d 774, 789 (W.D.N.C. 2013); *Cole v. Champion Enters.*, 496 F. Supp. 2d 613, 621 (M.D.N.C. 2007).

Here, Plaintiff sufficiently alleged that there was an offer and acceptance. North Carolina law accepts that, "an offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable…" N.C. GEN. STAT. ANN. § 25-2-206. An "offer must be communicated, must be complete and must be accepted in its exact terms." *Dodds v. St. Louis Union Tr. Co.*, 205 N.C. 153, 153 (1933). A valid acceptance of an offer is not effective unless it is "(a) absolute and unconditional; (b) identical with terms of the offer; (c) in the mode, at the place, and within the time . . . required by the offer." *Morrison v. Parks*, 164 N.C. 197, 80 S.E. 85, 85 (N.C. 1913). Plaintiff alleges that she offered to pay back the overpayment if Wells Fargo removed the negative credit information. This is sufficiently definite and was communicated to Wells Fargo. Wells Fargo then accepted the offer by agreeing to remove the negative information after the overpayment was paid.

Turning to the disputed elements, Wells Fargo contends that there was no mutual assent

6

and consideration was lacking. Regarding mutual assent, Wells Fargo argues that Plaintiff failed to specify the exact person at Wells Fargo who accepted the offer and whether that person was authorized to assent on behalf of Wells Fargo. Tellingly, Wells Fargo fails to cite to any caselaw supporting this proposition. Of note, the Supreme Court of North Carolina explains mutual assent, noting:

> There is no contract unless the parties assent to the same thing in the same sense. A contract is the agreement of two minds—the coming together of two minds on a thing done or to be done. A contract, express or implied, executed or executory, results from the concurrence of minds of two or more persons, and its legal consequences are not dependent upon the impressions or understandings of one alone of the parties to it. It is not what either thinks, but what both agree.

*Brown v. Williams,* 196 N.C. 247, 250 (1928) (internal quotations omitted). Here, accepting the well-pleaded facts as true, Plaintiff agreed to pay the overpayment if Wells Fargo removed the negative credit information. The parties clearly understand the basic terms and mutually agreed to them. While the exact person who accepted at Wells Fargo may not be presently known, Plaintiff is entitled to discovery on this issue.

Wells Fargo also contends there was no consideration as Plaintiff was obligated to repay the overpayment. As support, Wells Fargo cites to North Carolina cases which state that employees may be obligated to repay certain overpayments from employers and that a promise to perform a pre-existing duty is not considered new consideration. *See First Nat. City Bank v. McManus*, 29 N.C. App. 65, 71 (1976) (explaining that repayment is required if the repayment is not "obviously detrimental" to the employee and that this "issue is never simple or easily explained"); *see also Sinclair v. Travis*, 231 N.C. 345, 354 (1950) ("[A] promise to perform an act which such promisor is already bound to perform is insufficient consideration for a promise by the adverse party."). Nowhere in the Complaint does it state that Plaintiff was obligated to repay the overpayment, and there is no indication that Wells Fargo notified Plaintiff of her obligation to repay the overpayment.

7

Instead, as alleged in the Complaint, Plaintiff reached out to Wells Fargo regarding the overpayment. Moreover, Wells Fargo's blanket statement that Plaintiff was obligated to repay the overpayment is incongruent with *McManus*, as the court only said in certain circumstances that an employee was obligated to repay an overpayment—not all circumstances. Accordingly, Plaintiff has alleged sufficient facts showing that a valid contract existed between the parties.

The allegations also sufficiently support breach. To state a claim for breach of contract, plaintiff must allege a contractual obligation that has not been fulfilled by defendant. *Tasz, Inc. v. Indus. Thermo Polymers, Ltd.*, 80 F. Supp. 3d 671, 681 (W.D.N.C. 2015). Here, Plaintiff agreed to repay the overpayment if Wells Fargo removed the negative credit information. However, once Plaintiff did repay the overpayment Wells Fargo failed to remove the notice. This contravened the terms of the contract, resulting in breach. Therefore, assuming the well-pleaded facts as true and viewing them in a light most favorable to Plaintiff, a valid contract was formed and a breach occurred.

### C. Statute of Limitations

Even if there was a breach of contract, Wells Fargo argues the three-year statute of limitations bars Plaintiff's claim. In North Carolina, an action for breach of contract must be brought within three years. N.C. GEN. STAT. § 1-52(1) ("Within three years an action . . . [u]pon a contract, obligation or liability arising out of a contract, express or implied" must be brought.). "The claim accrues at the time of notice of the breach." *Ludlum v. State,* 227 N.C. App. 92, 94 (2013). "A statute of limitations defense may properly be asserted in a Rule 12(b)(6) motion to dismiss if it appears on the face of the complaint that such a statute bars the claim." *Horton v. Carolina Medicorp,* 344 N.C. 133, 136 (1996).

Based on the face of the Complaint, it does not appear that Plaintiff's breach of contract

claim is barred by the statute of limitations. Assuming the well pleaded facts are true, Plaintiff alleges that the breach occurred between 2018 and 2020, when the Plaintiff lost several job opportunities after she repaid the overpayment and Wells Fargo failed to remove the notice. However, Plaintiff does not specify the exact date when she first was made aware that Wells Fargo failed to remove the overpayment notice. This date, when Plaintiff first learned of the breach, is likely the operative date for the statute of limitations. Accordingly, it is not readily apparent that her claim is barred as she may not have learned that Wells Fargo failed to remove the overpayment notice until on or after April 1, 2019 (three years before the Complaint was filed). Therefore, viewing the facts in a light most favorable to Plaintiff, she could have learned that the overpayment notice had not been removed within the statute of limitations period, which prevents the statute of limitations defense from barring her breach of contract claim at this time.

### D. Negligent Misrepresentation

Wells Fargo asserts that Plaintiff failed to meet the heightened pleading standard for a negligent misrepresentation claim. North Carolina has adopted the definition of negligent misrepresentation set forth in the Restatement (Second) of Torts under which:

> [o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Lamb v. Styles*, 824 S.E.2d 170, 177 (N.C. Ct. App. 2019) (quoting Restatement (Second) of Torts § 552 (1977)). Thus, the tort of negligent misrepresentation occurs when (1) a party justifiably relies, (2) to his detriment, (3) on information prepared without reasonable care, (4) by one who owed the relying party a duty of care. *Simms v. Prudential Life Ins. Co. of Am.*, 537 S.E.2d 237, 240 (N.C. Ct. App. 2000); *Supplee v. Miller-Motte Business College, Inc.*, 768 S.E.2d 582, 600

9

(N.C. Ct. App. 2015); *T.W.T. Distributing, Inc. v. Johnson Products Co., Inc.*, 966 F. Supp. 2d 576, 582 (W.D.N.C. 2013). "Such a duty commonly arises within professional relationships." *Rountree v. Chowan County*, 252 N.C. App 155, 160 (2017). Moreover, Federal Rule of Civil Procedure 9(b) mandates a heightened standard for pleading a claim for fraud or mistake. *Topshelf Mgmt., Inc. v. Campbell-Ewald Co.*, 117 F.Supp.3d 722, 725 (M.D.N.C. 2015). Rule 9(b) requires, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). To meet this standard, the plaintiff must, at a minimum, describe "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby," otherwise known as the "who, what, when, where, and how" of the alleged fraud. *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (quotation marks omitted). This Court has previously held the heightened pleading standard applies to negligent misrepresentation claims. *Beckley v. Priority Auto Grp., Inc.*, No. 3:21-CV-00072-RJC-DSC, 2022 WL 899453, at *7 (W.D.N.C. Mar. 28, 2022).

Accepting all the well-pleaded facts as true, the Complaint states facts sufficient to meet all the elements of a negligent misrepresentation claim. First, it is plausible that Plaintiff's former employer, Wells Fargo, owed her a reasonable duty of care when reporting information relating to her credit. Second, the Complaint states that Wells Fargo continued to report false information after Plaintiff repaid the overpayment. This shows that Wells Fargo may have breached its duty to Plaintiff by reporting the information without reasonable care. Third, Plaintiff relied on Wells Fargo's assertion that it would remove the overpayment notice. And fourth, her reliance on Wells Fargo's reporting led to her detriment as she lost multiple job opportunities when Wells Fargo failed to remove the notice.

10

Moreover, the Complaint meets the heightened pleading standard under Rule 9(b) because it states the "who, what, when, where, and how" of the alleged mistake. *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008). For example, in the Complaint, the "who" is identified as Wells Fargo, who allegedly committed negligent misrepresentation; the "what" is identified as Wells Fargo's failure to remove the overpayment notice; the "when" is 2018 to 2020, the time period when the alleged breach occurred; the "where" is on Plaintiff's credit report; and the "how" is that Wells Fargo failed to remove the notice after Plaintiff repaid the overpayment, in contravention of the agreement between the parties. Plaintiff's failure to specifically identify the employee(s) she communicated with at Wells Fargo is not fatal to her claim at this time as the Complaint meets the heightened pleading standard.

Moreover, "there is no requirement that any precise formula be followed or that any certain language be used," and "[i]t is sufficient if, upon a liberal construction of the whole pleading, the charge of fraud might be supported by proof of the alleged constitutive facts." *Bear Hollow, LLC v. Moberk, LLC*, No. 5:05-CV-210, 2006 WL 1642126, at *5 (W.D.N.C. June 5, 2006). "Significantly, a court should not dismiss a complaint pursuant to Rule 9(b) if the court is satisfied that the defendant has been made aware of the particular circumstances for which he will have to prepare a defense at trial." *Id.* at 5. In this respect, Wells Fargo has been made aware of the negligent misrepresentation claim against it that stems from its failure to remove the notice after Plaintiff repaid the overpayment, resulting in lost employment opportunities for Plaintiff. Accordingly, Defendant's motion to dismiss the negligent misrepresentation claim is denied.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Defendant's Motion to Dismiss Plaintiff's Complaint, (DE 5), is **DENIED**.

11

**SO ORDERED.**

Signed: August 15, 2022

*/s/ Robert J. Conrad, Jr.*
Robert J. Conrad, Jr.
United States District Judge